# AGREEMENT

THIS AGREEMENT, MADE BY AND BETWEEN

## LOCAL 400

Chartered by the
United Food & Commercial Workers International Union, AFL-CIO-CLC



and

## GIANT FOOD LLC

Effective:   March 28, 2004      Termination:   March 29, 2008

AGREEMENT

THIS AGREEMENT, made and entered into this 28th day of March, 2004, between GIANT FOOD LLC (hereinafter referred to as the "Employer"), a participating member of Washington, D.C. Food Employers' Labor Relations Association (hereinafter referred to as "Employers' Council") and the UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 400 of Washington, D.C. chartered by the United Food and Commercial Workers International Union, AFL-CIO (hereinafter referred to as the "Union").

WITNESSETH:

WHEREAS, the Employers' Council is an employer association of food chains in and about the Washington, D.C. area.

WHEREAS, the Employer and the Union in the performance of this Agreement agree not to discriminate against any employee or applicant for employment because of race, color, religious creed, origin, age or sex.

The use of personal pronouns of the male gender is for grammatical purposes only and the contract should apply equally to persons of either gender; and

WHEREAS, the parties hereto desire to establish uniform standards and hours of labor, rates of pay, and other conditions under which the employees classified herein shall work for the Employer during the life of this Agreement and thereby promote a relationship between the parties hereto providing for more harmonious and efficient cooperation and mutual benefit.

ARTICLE 1
Successors and Assigns

1.1     This Agreement shall be binding on all signatories hereto, and their successors and assigns, whether such status is created by sale, lease, assignment or any other type of transfer or transaction. In consideration of the Union's execution of this Agreement, the Employer promises that its operations covered by this Agreement or any part thereof shall not be sold, conveyed or otherwise transferred or assigned to any successor without first securing the Agreement of the successor to assume the Employer's obligations under this Agreement and to offer employment subject to the terms of this Agreement, to all of the Employer's then current employees, recognizing their accrued seniority for all purposes. Provided, that the Employer shall not be a guarantor or be held liable for any breach by the successor or assignee of its obligations, and the Union will look exclusively to the successor or assignee for compliance with the terms of this Agreement.

1.2     The foregoing shall be applicable in cases only where the Employer sells or transfers more than ten percent (10%) of the facilities covered under this Agreement, and shall not apply in cases of store closing (30 days or more).

## ARTICLE 2
### Management Authority

2.1  The authority and responsibility for management of the business, including but not limited to the planning, direction and control of the work force shall repose exclusively in the Employer and its appointed representatives except as provided in this Agreement.

2.2  In the event that the Employer contemplates the introduction of major technological changes affecting bargaining unit work within the Grocery Department, advance notice of such changes will be given to the Union. If requested to do so, the Employer will meet with the Union to discuss the implementation of such changes before putting such changes into effect.

2.3  Should the Employer intend to substitute electronic checkout systems for existing equipment in any store, the Employer agrees to notify the Union in advance and to provide the Union a list of all employees regularly assigned to the store on the effective date of the utilization of said systems. Said employees shall not be removed from the Employer's payroll as a result of the installation of such a system. Employees may continue to be transferred, assigned to other work, or laid off in accordance with the seniority provisions of this Agreement provided the layoff is for reasons other than the installation of such a system.

2.4  The Employer further agrees that all fresh meat products will be cut, packaged, prepared and sold by the employees in the stores, covered by this Agreement.

Exceptions may be made provided the Union is notified in advance and given written assurance that no member's job will be eliminated as a result of such exception. The Union agrees that it will not withhold its Agreement.

For the purpose of this section "notified" shall mean a letter for each individual introduction of a class of product (e.g., boneless sub primal cuts of meat, deveined liver, rolled veal, etc.). "Member" shall mean full time employees on the payroll actively at work on the effective date of this Agreement or who are on leave of absence or who are sick or injured and return to work as elsewhere provided for in this Agreement. "Eliminated" means removed from payroll or reduced to part time and is not intended to refer to the nature of the work being performed by the employee. Employees may continue to be transferred, assigned to other work, or laid off in accordance with the seniority provisions of this Agreement, provided the layoff is for reasons other than the introduction of new products and/or new methods.

It is not the Union's intention to impede progress in our industry with respect to any new method of cutting and packaging meat, delicatessen and seafood products, and the necessity for change to accommodate a changing society.

The Union reiterates, therefore, its intention with respect to the "products clause", as follows:

The Employer may introduce new methods and new products, i.e., (make exceptions) provided it does the following:

1. Union must be notified in advance.

2. The Employer will list all new products or new methods in letter of notification.

3. The Employer will give written assurance that no member's job will be eliminated, in accordance with subparagraph 2.4.

4. The Employer will meet at the Union's request for the purpose of reviewing complaints and further compliance of this Section and Article.

If 1, 2, 3, & 4 above are complied with, the Union will not withhold its Agreement.

## ARTICLE 3
### Recognition

3.1    The Employer recognizes the Union as the exclusive bargaining agency for all of its employees, except Store Manager, Assistant Manager, Co-Managers, and In-Store Bakery Personnel (production employees), in its retail food stores within the City of Washington, D.C., the Counties of Albemarle, Arlington, Augusta, Caroline, (excluding that portion that falls within a twenty-five mile radius of the City of Richmond), Clarke, Culpeper, Fairfax, Fauquier, Frederick, Greene, Highland, King George, Loudoun, Louisa, (excluding that portion that falls within a twenty-five mile radius of the City of Richmond), Madison, Orange, Page, Prince William, Rappahannock, Rockingham, Shenandoah, Spotsylvania, Stafford and Warren, the independent Cities of Alexandria, Charlottesville, Fairfax, Falls Church, Fredericksburg, Harrisonburg, Manassas, Manassas Park, Staunton, Waynesboro, and Winchester in the State of Virginia, and the Counties of Anne Arundel south of South River from Chesapeake Bay to Maryland State Route 450, south of Maryland State Route 450 from South River to Prince George's County, Calvert, Charles, Montgomery, Prince George's and St. Mary's in the State of Maryland.

3.2    The Employer further agrees that if the Employer should establish a new food store, or stores, within the territories described in Paragraph 3.1, this Agreement shall apply to such a new store or stores. In the event the Employer engages in Department or Discount type stores, then the Employer and the Union shall negotiate as to the terms for wages, hours and working conditions for employees working in such stores.

3.3    All meat, fish or poultry, fresh, chilled, frozen, cooked or smoked, historically or customarily offered for sale by the Employer in its Retail Meat Departments, will continue to be handled by Meat Department employees.

3.4   Floor care may be performed by an outside vendor. Employees who performed floor care prior to March 26, 2000 shall receive the same hours and rates of pay as they had in the past.

3.5   All work and services connected with, or incidental to the handling or selling of all merchandise offered for sale to the public in the Employers' retail establishments covered by this Agreement shall be performed only by employees of the Employer within the unit referred to above, for which the Union is recognized as the collective bargaining agency by the Employer except such work as is currently performed at the point of delivery by driver-salesmen in servicing retail markets with perishable bakery products, beverages, greeting cards, magazines, potato and corn chips directly from the delivery vehicle. Further excepting that representatives of a company sponsoring special promotions may erect and stock initial special displays in connection with said special promotions. There shall be a limitation of three (3) times per year for promotional programs using persons other than employees of the Employer, provided, however, that such special promotions must be area-wide promotions. The Employer shall notify the Union in writing prior to the beginning of any promotional program.

The application of this provision shall in no way restrict the work which may be performed by the Store Managers, Co-managers or Assistant Managers.

3.6   The Employer shall notify the Union thirty (30) days prior to a store closing. The Employer shall negotiate the effect on employees of the store scheduled to be closed.

## ARTICLE 4
## Union Security

4.1   All employees shall, as a condition of employment, become and remain members of the Union on and after the thirty-first (31st) day following the date of employment, or on and after the thirty-first (31st) day following the effective date of this Agreement, whichever is the later.

4.2   Upon failure of any employee to become and remain a member of the Union within the period and under the conditions specified in Paragraph 4.1 above, the Union shall notify the Employer, in writing, of such failure and the Employer shall, within seven (7) days of receipt of such notice, discharge any such employee as provided in the Labor Management Relations Act of 1947 as amended.

4.3   The application of Paragraph 4.1 above, is deferred in any jurisdiction where the Union Shop is not permitted by law, except for the purpose of representation, unless and until such law is declared unconstitutional or is repealed or otherwise becomes inoperative as to the operations of the Employer.

4.4   The Employer will notify the Union in writing as soon as possible within twenty-five (25) days from the date of employment, reinstatement, or transfer into the bargaining unit of any employee, of the name of such employee, the home address, place of employment, social security number and job classification (full time or part time), and the date of employment, reinstatement, transfer, termination, or change in status from part time to full time or full time to part time.

9.8   Night Crew employees in the Meat Department shall be permitted to start their shifts at 9:00 p.m. on Sundays or holidays at the straight time rate of pay.

9.9   The meal period for Night Crew workers shall be one-half (1/2) hour and the eight (8) hour shift shall be worked in a period of eight and one-half (8-1/2) consecutive hours.

9.10   Any regular member of the Night Crew will receive his basic weekly wage plus his night premium in the computation of his overtime, vacation or holiday pay.

9.11   Employees who want on or off the Night Crew shall bid as follows: A request must be in writing to the Employer and will be placed on the list referred to in Article 5.10. As day openings occur, the most senior employee on the combined list shall be assigned to the job provided the employee is available to work such hours on a regular and continuing basis.

Employees in the Meat Department who want on or off the night crew shall bid on or off on a seniority basis in a seniority territory. No new hires shall be employed until said bids are honored, provided that said employees do so in writing.

## ARTICLE 10
## Working Conditions

10.1   The Employer will furnish and launder such store linens as it desires worn by its employees. In the event the Employer provides Dacron or similar type uniforms for employees, these garments may be laundered by the employee. Since this item of expense is intended to make the Employer's service more attractive to customers, members agree to cooperate by presenting a neat, clean, businesslike appearance while on duty in the store.

10.2   The Employer shall have the right to discharge or discipline any employee for good cause, including but not limited to, proven or acknowledged dishonesty, intoxication during working hours, drinking or gambling on Employer's premises, or direct refusal to obey orders by the Employer which are not in violation of this Agreement, provided, however, that no employee shall be discharged or discriminated against because of membership in the Union or for Union activities.

10.3   In the event that an employee's work is unsatisfactory, he shall be given at least one (1) written notice before disciplinary action is taken, and a copy of the notice shall be sent to the Union at the same time. Notices and warnings shall become null and void nine (9) months from the date of issue.

10.4   Representatives of the Union shall have access to the Employer's stores for the purpose of determining that the terms of this Agreement are being complied with including but not limited to inspecting work schedules, investigating the standing of employees and inspecting the pay records, which shall be available for a reasonable length of time.

10.5   No employee shall suffer a reduction of hourly wage rates, increase of hours, or reduced vacation time solely by the signing of this Agreement.

10.6   If a physical examination or health permit is required by the Employer or Local Government, all expenses attached to the same shall be borne by the Employer.

10.7   If any employee is required to work in more than one (1) store in the same day, the expense for necessary transportation shall be borne by the Employer. The time required for travel between the stores shall be included as a portion of the employee's work day and considered as time worked for all purposes. An employee on temporary assignment away from his regularly assigned store which requires additional transportation expense shall be reimbursed for such increased expense on the basis of thirty-six cents ($.36) per mile, except, however, when an employee chooses public transportation, except taxicabs, he shall be reimbursed only for the actual cost of such increased transportation. Temporary assignments will not exceed thirty (30) days except in cases of relief of an employee absent on extended sick leave.

10.8   No temporary transfer will be allowed in or out of Local 400's jurisdiction except in demonstrable emergency.

10.9   Employees shall be at their stores ready for work at their scheduled starting time, otherwise they are reporting late. They shall remain at their work until their scheduled quitting time. Employees shall be paid for all time worked. There shall be a time recording device in each of the Employer's stores for the purpose of recording time worked. The Employer and the Union agree that a proven violation of established time recording device rules, including working before punching in or after punching out, may subject such an employee to disciplinary action up to and including discharge. Furthermore, all time during which an employee is suffered or permitted to work or is required to be on duty on the Employer's premises at a given work place shall be considered hours worked and recorded.

10.10   Except by mutual agreement between the employee and the Employer, employees shall have a minimum of ten (10) hours off between the ending of their scheduled shift and the starting of their next scheduled shift. Any employee who works during this ten (10) hour period shall be paid for such time at the rate of time and one-half (1-1/2) their straight time rate of pay.

10.11   The Employer shall maintain two (2) first aid kits, fully equipped in each store to be available for all shifts worked. One (1) first aid kit shall be located in the Meat Department.

10.12   The Employer agrees to provide sufficient space on the store bulletin board for the posting of Union activities after approval by management.

10.13   No employee may be required to make up or be disciplined for cash register shortages, unless he is given the privilege of checking the change and daily receipts upon starting and completing the work shift.

10.14   No employee shall be required to make good any bad checks cashed unless said checks are cashed in violation of the Employer's rules and regulations, which have previously been given to the employee in writing.

10.15   No employee shall be given a polygraph (lie detector) test, unless the Union agrees in writing.

10.16   The cleaning of the Meat Department and immediate working area shall be performed by employees of the Meat Department.

10.17   The Employer will discuss, investigate and correct any problem of jackets or gloves in connection with frozen food lockers and dairy.

## ARTICLE 11
### Vacations

11.1   Full time employees with one (1) or more years of continuous service shall be granted vacations as follows:

| Annual Vacation | Pro-Rata Vacation On Termination |
|---|---|
| One week uninterrupted after one year | 1/12 week for each additional month |
| Two weeks uninterrupted after three years | 2/12 week for each additional month |
| Three weeks uninterrupted after seven years | 3/12 week for each additional month |
| Four weeks after thirteen years | 4/12 week for each additional month |
| Five weeks after twenty years | 5/12 week for each additional month |

11.2   Employees discharged for proven or acknowledged dishonesty shall not be entitled to any vacation pay.

11.3   From January 1 to March 31 of each year, employees shall select their desired date for vacation for that year. Said selection will be awarded on a seniority basis within each department. After March 31, employees may select vacant weeks by seniority but may not bump less senior employees who have exercised their vacation selection during the bid period. Vacations requested after the bid period will be honored on a first-come, first-served basis. Employees may take vacation in any of the fifty-two (52) calendar weeks, subject to management approval.

The vacation schedule of any employee cannot be changed, except by mutual agreement. The vacation schedule shall be available on request by an employee.

# ARTICLE 21
## Grievances and Arbitration

21.1    Should a controversy, dispute or disagreement arise during the period of this Agreement concerning the interpretation of the provisions of this Agreement, except that liability for wage claims shall not be subject to arbitration unless involving a disputed interpretation of the provisions of the Agreement, there shall be no cessation or stoppage of work or lockout because of such controversy, dispute or disagreement, but the difference shall be adjusted in the following manner.

21.2    Upon receipt of notice from either party, the representative of the Employer and the representative of the Union shall, within three (3) days, commence discussion in an attempt to reach a settlement of the controversy.

21.3    If the matter is not amicably settled under 21.2 above, then either party may, on giving five (5) days notice to the other party:

1. Submit the matter to the Federal Mediation and Conciliation Service for a list of fifteen (15) arbitrators and the parties shall select therefrom one (1) arbitrator as follows: Each of the parties shall strike one (1) name from the list until a last name remains, each of the parties drawing lots to determine who shall be entitled to the first strike.

2. The arbitrator shall not have the authority to decide questions involving the jurisdiction of any Local or of the International or which may in any way affect or change the Union Security Clause, nor shall the arbitrator have the authority to effect a change in, modify, or amend any of the provisions of this Agreement or to make decisions or provisions covering wages or working conditions to be incorporated either in a new Agreement or any subsequent annual Agreement, except as hereinafter provided.

3. In the event that one (1) party should fail to make their selection of arbitrators within two (2) weeks after receipt of notification by the other party that their choices have been submitted, then the first choice of the selecting party shall be binding on the non-selecting party.

4. In the further event, should one (1) party fail to participate in the scheduled arbitration proceeding, the other party may proceed unilaterally and the decision of the arbitrator shall be final and binding upon all parties.

21.4    The provisions of no strike or lockout shall not be binding on either party if the other fails to abide by the decision of the arbitrator. The expenses of the arbitrator shall be borne equally by both the Employer and the Union.

21.5    All complaints must be filed, in writing, within thirty (30) days after occurrence of the matter in dispute or disagreement, provided that any complaints in reference to dismissal must be filed, in writing, to the Employer within ten (10) days from the date of dismissal. Complaints not filed within the limits herein specified shall have no right of appeal by any party involved.

21.6    During the consideration of such difference or misunderstanding, neither party shall use any coercive or retaliatory measures to compel the other party to accede to its demands.

21.7    Since it is the desire of the parties to expedite the handling of all grievances, they therefore agree that the time limits prescribed must be followed, unless agreed to by the Union and the Employer. The party failing to move forward as required shall be deemed to have withdrawn the grievance. All notices required herein shall be in writing.

## ARTICLE 22
## Military Service

The Employer will comply with the applicable laws of the United States concerning the reemployment of persons leaving the military service of the United States. At the time an employee leaves for military service, he shall receive whatever vacation pay is due him. The application of this provision will comply with the Uniformed Services Employment and Reemployment Rights Act. Upon return from military service, the employee shall assume his original employment date and be entitled to his pro-rata vacation.

## ARTICLE 23
## No Strikes or Lockouts

There will be no strikes or lockouts during the existence of this Agreement. The Union agrees that during such time it will not order, but will use every effort to prevent a concerted cessation of work by any of the employees of the Employer for any reason;

Except for:

(1)    Refusal to comply with the arbitration machinery set forth herein, or

(2)    Refusal to comply with the decision of the Board of Arbitration, or

(3)    Failure to reach an agreement in the negotiation of wages, hours and working conditions provided for in Article 3, paragraph 3.2 herein above. Nothing herein contained shall compel any employee to walk through a picket line, provided the picket line has the sanction of his own International Union.

## ARTICLE 24
## Invalidation

Should any Article, Section, or portion thereof, of this Agreement be held unlawful and unenforceable by any court of competent jurisdiction, such decision of the court shall apply only to the specific Article, Section, or portion thereof directly specified in the decision, provided, however, that upon such a decision the parties agree immediately to negotiate a substitute for the invalidated Article, Section, or portion thereof.

## ARTICLE 25
### Duration of Contract

This Agreement shall continue in effect from March 28, 2004, through March 29, 2008, and shall continue in effect from year to year after March 29, 2008, unless either party serves notice in writing on or before January 29, 2008, or on or before January 28th of any year thereafter of a desire for termination of or for changes in the Agreement. In the event either party serves such notice in respect to changes in the Agreement, the Employer and the Union shall immediately begin negotiations on the proposed changes, and that pending the termination of negotiations neither party shall change conditions existing under the Agreement, it being understood and agreed that either party may in its own discretion, by written notice, unilaterally terminate such negotiations whenever it so desires.

IN WITNESS WHEREOF, the parties hereto have set their hand and seal the day and year first above written.

FOR THE EMPLOYER:                                    FOR THE UNION:

_____ 2/8/05                       _____ 2/8/05
Eric D. Weiss          Date                          C. James Lowthers          Date