**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| Kareem Ashe, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05CV2473 (JDB) |
| | ) | |
| v. | ) | |
| | ) | |
| Giant of Maryland, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT GIANT'S MOTION TO DISMISS**

Defendant, Giant of Maryland, LLC ("Giant" or "the Company"), hereby moves for an order dismissing this action in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12 (b)(1) & (6).

In his eight count *pro se* complaint, plaintiff Kareem Ashe alleges that Giant, his former employer:  discriminated against him because of his race and sex in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01, *et seq.* (Counts One, Four, Five and Six); retaliated against him in violation of the DCHRA (Counts Two and Three); "constructively discharged" him in violation of public policy, as articulated in the DCHRA (Count Seven); and breached his "employment contract" with Giant by terminating him (Count Eight).

The DCHRA claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (6), as the DCHRA has no application to plaintiff's employment with Giant.  At all time covered by the complaint, plaintiff was employed by Giant exclusively within the State of Maryland, not the District of Columbia.  All acts which are alleged to constitute discrimination and retaliation

1

occurred exclusively in Maryland. Plaintiff has not alleged any acts of discrimination within or, indeed, relating to the District of Columbia. The DCHRA simply does not govern plaintiff's employment with Giant in Maryland or acts which occurred in Maryland.

Similarly, plaintiff's "public policy" wrongful discharge claim must be dismissed for failure to state a claim, as the D.C. Court of Appeals has clearly held that such a claim may not be predicated upon an alleged violation of the DCHRA. Finally, plaintiff's breach of contract claim is completely preempted by Section 301 of the Labor-Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185, as the "employment agreement" Giant allegedly breached is a collective bargaining agreement containing mandatory, final and binding grievance and arbitration provisions, and the claim must be dismissed for failure to state a claim under Section 301.

The grounds for this motion are set forth in detail in Defendant Giant's Statement of Points and Authorities, submitted herewith, and the Declaration of Bart P. Plano, submitted herewith.

## CONCLUSION

WHEREFORE, defendant Giant of Maryland LLC respectfully requests that the Court grant its motion dismiss and enter an order dismissing the complaint, in its entirety, with prejudice.

Dated: January 5, 2006

_____/s/ Edward R. Levin_____
Edward R. Levin (D.C. Bar No. 7823)
Henry A. Platt (D.C. Bar. No. 425994)
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Ave., N.W., Ste. 1000
Washington, DC 20037-1922
(202) 333-8800

Attorneys for Defendant
Giant of Maryland, LLC

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **MOTION TO DISMISS** was

served by first class U.S. Mail, postage prepaid, this 5th day of January, 2006, on Plaintiff, *pro se*,

addressed as follows:


Kareem Ashe
5906 Clay Street, N.E.
Washington, D.C.  20019


_____/s/ Edward R. Levin _____

*BP0449*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Kareem Ashe, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05CV2473 (JDB) |
| | ) | |
| v. | ) | |
| | ) | |
| Giant of Maryland, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT GIANT'S STATEMENT OF
## POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Defendant, Giant of Maryland, LLC ("Giant" or "the Company"), has moved for an order

dismissing this action in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12 (b)(1) & (6).

Giant submits this Statement of Points and Authorities in support of that motion.

In his eight count *pro se* complaint, plaintiff Kareem Ashe alleges that Giant, his former

employer: discriminated against him because of his race and sex in violation of the District of

Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01, *et seq.* (Counts One, Four,

Five and Six); retaliated against him in violation of the DCHRA (Counts Two and Three);

"constructively discharged" him in violation of public policy, as articulated in the DCHRA

(Count Seven); and breached his "employment contract" with Giant by terminating him (Count

Eight).[1]

---

[1] Giant removed this action from D.C. Superior Court on December 28, 2005. This Court
has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1337 and 29 U.S.C. § 185.

The DCHRA claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (6), as the DCHRA has no application to plaintiff's employment with Giant. ***At all times covered by the Complaint, plaintiff was employed by Giant exclusively within the State of Maryland, not the District of Columbia.*** All acts which are alleged to constitute discrimination and retaliation occurred in Maryland. Plaintiff has not alleged any acts of discrimination within or, indeed, relating to the District of Columbia. The DCHRA simply does not govern plaintiff's employment with Giant in Maryland or acts which occurred in Maryland.

Similarly, plaintiff's "public policy" wrongful discharge claim must be dismissed for failure to state a claim, as the D.C. Court of Appeals has clearly held that such a claim may not be predicated upon an alleged violation of the DCHRA. Finally, plaintiff's breach of contract claim is completely preempted by Section 301 of the Labor-Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185, as the "employment agreement" Giant allegedly breached is a collective bargaining agreement ("CBA") containing mandatory, final and binding grievance and arbitration provisions, and the claim must be dismissed for failure to state a claim under Section 301.

## STATEMENT OF FACTS

Defendant Giant operates a chain of retail grocery stores where its store employees are employed under collective bargaining agreements with certain unions, including United Food and Commercial Workers Union, Local 400, AFL-CIO-CLC ("Local 400" or "the Union"). Plaintiff, Kareem Ashe, was a member of the bargaining unit represented by Local 400 as his exclusive bargaining agent under the terms of a collective bargaining agreement ("CBA"). Declaration of Bart P. Plano ("Plano Decl.") ¶ 3. Plaintiff began working for Giant on September 25, 2003 in its Largo, Maryland store, where he remained employed until his

termination on June 24, 2005.  Plano Decl. ¶¶ 3-6.  All decisions concerning his employment were made in Maryland, and plaintiff never worked at any Giant store in the District of Columbia.  Plano Decl. ¶ 6.  Although not material to resolution of the instant motion, Giant states that it terminated Mr. Ashe for excessive absenteeism in violation of an Absentee Control Program negotiated pursuant to the CBA with Local 400.  Plano Decl. ¶ 6.

Local 400 filed a grievance on behalf of plaintiff challenging his discharge pursuant to Article 21 of the CBA.  At a grievance hearing, plaintiff stated that he did not care to contest dismissal, and merely wanted to be paid for his accumulated, unused vacation pay.  The Union took no further action under the CBA and never requested arbitration.  Plano Decl. ¶ 7.

## ARGUMENT

## I.    THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S DCHRA CLAIMS, AS GIANT EMPLOYED PLAINTIFF IN MARYLAND, ALL ACTS OF DISCRIMINATION AS ALLEGED OCCURRED IN MARYLAND, AND THE DCHRA DOES NOT GOVERN PLAINTIFF'S EMPLOYMENT IN MARYLAND

In Counts One, Four, Five and Six of his complaint, plaintiff alleges that Giant discriminated against him because of his race and sex in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01, *et seq.*  In Counts Two and Three, he alleges that Giant retaliated against him in violation of the DCHRA.  The facts supporting these allegations in the complaint are sparse.  Basically, plaintiff alleges in paragraph 10 of the complaint that, in December 2004, a supervisor instructed him to remove what he calls a scull cap, which he alleges the supervisor referred to as a "Doo-Rag," "and follow the company policy of wearing his food safety hat."  Compl. ¶ 10.  Plaintiff alleges that this somehow constituted a form of racial harassment, and that he was "retaliated against and feel like my Civil Rights have been grossly violated" as a result.  *Id.*  He further alleges that, in May 2005, he left work "early" to file a complaint with the EEOC, for which he alleges he received two reprimands.  *Id.*  He

does not allege the substance of his EEOC charge, or that his termination in June 2005 had anything to do with the scull cap incident or filing the EEOC charge.  The factual basis of his sex discrimination claim is never alleged.  Most importantly, ***he does not allege that he ever worked in the District of Columbia for Giant, that any discriminatory or retaliatory acts occurred in the District of Columbia, that any alleged discrimination, harassment or retaliation impacted any employment in the District of Columbia, or that he ever sought and was denied employment by Giant in the District of Columbia.***

The question of whether the DCHRA covers the employment dispute at issue is a question of subject matter jurisdiction.  *See, e.g., Quarles v. General Investment & Develop. Co.*, 260 F. Supp. 2d 1, 17-21 (D.D.C. 2003) (examining issue under Fed. R. Civ. P. 12(b)(1)); *Martin v. Holiday Universal, Inc.*, 1990 U.S. Dist. LEXIS 18102 (D.D.C. Oct. 3, 1990) (copy attached) (same).  Under Rule 12(b)(1), "the plaintiff bears the burden of establishing that the court has jurisdiction."  *Quarles*, 260 F. Supp. 2d at 49 (quoting *Fowler v. District of Columbia,* 122 F. Supp. 2d 37, 39-40 (D.D.C. 2000)).  "The rule also imposes 'an affirmative obligation [on the court] to ensure that it is acting within the scope of its jurisdictional authority ... [and for that] reason, the '[p]laintiff's factual allegations in the complaint ...will bear closer scrutiny in resolving a 12(b)(1) motion' than on a 12(b)(6) motion for failure to state a claim.'"  *Id.* (quoting *Fowler,* 122 F. Supp. 2d at 40).  Therefore, "the Court may consider matters outside the pleadings to assure itself that it in fact has jurisdiction over this case."  260 F. Supp. 2d. at 50.[2]

The express legislative purpose of the DCHRA was "to secure an end ***in the District of Columbia*** to discrimination for any reason other than that of individual merit…"  D.C. Code § 2-

---

[2] Unlike Rule 12(b)(6), reference to matters outside the pleadings under Rule 12(b)(1) does not require the Court to convert the motion to summary judgment.  *See* Fed. R. Civ. P. 12(b).

1401.01 (2005) (emphasis added).  As this Court has explained, "the DCHRA does not apply to acts occurring outside the District of Columbia."  *Martin,* 1990 U.S. Dist. LEXIS 18102 at *10. *See also Matthews v. Automated Bus. Sys. & Serv., Inc.*, 558 A.2d 1175, 1180 n.8 (D.C. 1989) ("assum[ing], without deciding, that the District of Columbia Human Rights Act does not apply to acts occurring outside the District.") (citing *District of Columbia v. Schwerman Trucking Co.*, 327 A.2d 818, 825 (D.C. 1974) (D.C. Minimum Wage Act not applicable to work performed outside the District)).

Nevertheless, the Courts have broadly interpreted this language as evidencing an intention "to cover all discrimination *concerning jobs located in the District of Columbia*, even if the application and decision to discriminate were made outside the District."  *Green v. Kinney Shoe Corp.,* 704 F. Supp. 260 (D.D.C. 1988) (emphasis added).  As the D.C. Court of Appeals has explained, "[i]f the events alleged in [the] complaint occurred in the District of Columbia, they are subject to scrutiny under [the DCHRA], regardless of whether [the plaintiff's] 'actual place of employment' was in Maryland, the District or both."  *Matthews*, 558 A.2d at 1180.  The "critical factual issue bearing on jurisdiction is whether these events took place in the District." *Id.  See also Quarles*, 260 F. Supp. 2d at 20 ("the most important factor in determining whether a court has subject matter jurisdiction over a claim filed pursuant to the DCHRA is not whether the plaintiff was actually employed in the District of Columbia but whether the alleged discriminatory acts occurred in the District.") (citing *id.*).

In the present case, plaintiff does not allege that he was employed by Giant within the District of Columbia, that any alleged discriminatory or retaliatory acts occurred within the District, that he performed any job duties at all within the District, that any decisions concerning his employment were made within the District, that he ever applied for a position within the

District, or that he ever sought a transfer or promotion into a Giant facility located in the District. As plaintiff fails to allege these essential elements of his DCHRA claims, they must be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  As the Declaration of Bart Plano submitted herewith establishes that plaintiff was exclusively employed in the Company's store in Largo, Maryland, all decisions concerning plaintiff's employment were made in Maryland, and plaintiff does not allege that any discriminatory acts occurred within the District, the DCHRA claims must also be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**II.    PLAINTIFF'S "CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY" CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM, AS THE D.C. COURT OF APPEALS HAS CLEARLY HELD THAT A PUBLIC POLICY WRONGFUL DISCHARGE CLAIM MAY NOT BE PREDICATED UPON AN ALLEGED VIOLATION OF THE DCHRA**

In Count Seven of his *pro se* complaint, plaintiff alleges that he was "constructively terminated due to the discriminatory, harassing and retaliatory actions of the agents and supervisory employees of Giant."  Compl. ¶ 37.  This "constructive termination," plaintiff alleges, "violated public policy, as articulated in <u>inter</u> <u>alia</u>, the District of Columbia Human Rights Act, as amended."  Compl. ¶ 38.  Putting aside the fact that Giant *actually*, not *constructively*, terminated plaintiff, *see* Compl. ¶ 10 ("On the week ending June 19 – June 25, 2005 I was terminated from Giant"), plaintiff fails to state a claim upon which relief may be granted as a matter of law.

The District of Columbia Court of Appeals recognizes "an intentional tort for wrongful discharge based upon a 'very narrow' public policy exception to the at-will doctrine."[3] *Fingerhut v. Children's Nat'l Med. Ctr.,* 738 A.2d 799, 803 (D.C. 1999).  *See also Carl v.*

_____

[3] It is "well-settled law 'in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for not reason at all.'"  *Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42, 48 n.2 (D.D.C. 2003) (quoting *Adams v. George W. Cochran & Co.,* 597 A.2d 28, 30 (D.C. 1991) (citations omitted)).

6

*Children's Hosp.,* 702 A.2d 159, 164 (D.C. 1997) (en banc); *Adams v. George W. Cochran &*

*Co.,* 597 A.2d 28, 30 (D.C. 1991). The wrongful discharge in violation of District of Columbia

public policy *exception to the employment at-will doctrine* is plainly unavailable to plaintiff, as

he never worked for Giant in the District of Columbia as an "at-will" employee or otherwise; he

was employed in Maryland and the terms and conditions of his employment were exclusively

governed by the CBA. *See, e.g., Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42, 48 & n.2

(D.D.C. 2003) (finding tort inapplicable to employee subject to collective bargaining agreement).

Moreover, as the Court must interpret and apply the terms of the CBA to resolve plaintiff's claim

(*i.e.*, to determine whether he was an at-will employee and whether the discharge was

"wrongful" under the terms of the agreement that governed his employment with Giant), the

claim is preempted by Section 301 of the LMRA, 28 U.S.C. § 185, and must be dismissed for the

reasons set forth in Section III, *infra.*

Even if the cause of action in tort were available to plaintiff, however, and even if the

claim were not completely preempted by Section 301, the Court must nevertheless dismiss the

claim pursuant to Fed. R. Civ. P. 12(b)(6), as a public policy wrongful discharge claim can not,

as a matter of law, be predicated upon an alleged violation of the DCHRA.

As the Court of Appeals recently explained, although the Court in *Carl* "left future

applications of the tort to be decided on a case-by-case basis, [the Court] stressed that any such

application must be 'carefully tethered to fundamental policies' implicit in 'statutes or municipal

regulations, or in the Constitution.'" *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d

633, 645 (D.C.), *cert. denied*, 126 S. Ct. 399 (2005) (quoting *Carl,* 702 A.2d at 164). In

succeeding cases, however, in "deference to the legislative role," "the court [has] declined to

apply this cause of action where the policy in question was not implicit – *i.e.*, embodied in some

related statute – but rather was 'explicit and [might] apply directly' through a statute expressly addressing the matter." *Id.* (quoting *Freas v. Archer Servs., Inc.,* 716 A.2d 998, 1002 (D.C. 1998) (rejecting application of *Carl* as unnecessary where suit was based on statutorily banned and actionable retaliation for exercising rights under the D.C. Workers' Compensation Act)).

In *McManus v. MCI Communications Corp.,* 748 A.2d 949 (D.C. 2000), *cert. denied,* 531 U.S. 1183 (2001), the Court noted and applied its previous rejection of "the argument . . . that a public policy exception to the at-will doctrine applies to an alleged statutory violation." *Id.* at 957 (citing *Freas,* 716 A.2d at 1002). Specifically, the Court expressly refused to recognize a public policy exception to the at-will doctrine *based upon an alleged violation of the DCHRA. Id.* Here, as in *McManus*, *Freas* and *Beretta*, the DCHRA provides an express statutory framework for addressing and remedying discharges in alleged violation of the statute, and plaintiff's "public policy" claim based upon an alleged violation of the DCHRA thus fails to state a claim upon which relief may be granted.

**III.    PLAINTIFF'S BREACH OF CONTRACT AND WRONGFUL DISCHARGE CLAIMS ARE COMPLETELY PREEMPTED BY SECTION 301 OF THE LMRA, AND PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER SECTION 301**

In addition to his D.C. common law claim for "constructive discharge in violation of public policy" (Count Seven), plaintiff alleges in Count Eight of his complaint that Giant "breached the employment contract with plaintiff Ashe due to the discriminatory, harassing and retaliatory actions of the agents and supervisory employees of Giant." Compl. ¶ 42. The "employment contract," of course, is the CBA between Giant and Local 400.[4]

---

[4] Documents referenced in the complaint are deemed to be included as part of the complaint for purposes of ruling on a Rule 12(b)(6) motion. *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992). In addition, the Court can take into consideration a document integral to the complaint without converting the motion into a summary judgment motion under Rule 56, even if the plaintiff failed to attach or

Claims for breach of collective bargaining agreements are governed exclusively by Section 301(a) of the Labor-Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185(a).[5] Section 301 confers subject matter jurisdiction on the federal courts over controversies involving collective bargaining agreements. 29 U.S.C. § 185(a); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988). Section 301 is more than just a jurisdictional statute, however. The Supreme Court has held that Section 301 "authorizes federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements," *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 451 (1957), which "uniformly prevails over inconsistent local rules." *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962); *see also Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994); *Bush v. Clark Constr. & Concrete Corp.*, 267 F. Supp. 2d 43, 46 (D.D.C. 2003).

Thus, in cases involving collective bargaining agreements, state laws purporting "to define the meaning or scope of a term in a contract suit [are] pre-empted by federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985). *See also Bush*, 267 F. Supp. 2d at 46 (dismissing as "completely preempted" under Section 301 state law claim for recovery of wages arising from and requiring interpretation of collective bargaining agreement). Likewise, when the "resolution of [a] state law claim depends upon the meaning of a collective bargaining

---

incorporate the document by reference. *See International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). This is particularly appropriate when ruling on issues of federal labor law preemption based on the incontrovertible existence of a collective bargaining agreement. *See, e.g., Carvalho v. International Bridge & Iron Co.*, 2000 U.S. Dist. LEXIS 4419, *2 (D. Conn. Feb. 25, 2000) (copy attached); *Argento v. Airborne Freight Corp.*, 933 F. Supp. 373, 376 n.2 (S.D.N.Y. 1996); *Wilhelm v. Sunrise Northeast, Inc.*, 923 F. Supp. 330 (D. Conn. 1995).

[5] Section 301 states: "suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a).

agreement," the state law claim is pre-empted.  *Lingle*, 486 U.S. at 405-06.  "When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Bush*, 267 F. Supp. 2d at 45 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

As noted in Section II, *supra*, plaintiff's "public policy" wrongful discharge claim is substantially dependent upon an interpretation and application of the CBA, as the Court must review, interpret and apply the agreement to determine whether plaintiff was an "at-will" employee entitled to invoke the "public policy" tort.  The Court must also review, interpret and apply the CBA to determine whether plaintiff's discharge was, in fact, "wrongful" within the meaning of the CBA.  *See, e.g., Sokos*, 283 F. Supp. 2d at 47-49 (wrongful discharge claim preempted by Section 301).  Plaintiff's "breach of contract" claim is even more straightforward, as Section 301 expressly governs claims for breach of collective bargaining agreements.  *See, e.g., Bush*, 267 F. Supp. 2d at 46 (state law breach of contract claim preempted by Section 301).

When resolution of a state law claim depends upon the interpretation of a collective bargaining agreement, "the claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law."  *Allis-Chalmers Corp.*, 471 U.S. at 220.  Under Section 301, an employee covered by a collective bargaining agreement ***must*** seek enforcement of his rights through the union by whatever procedure has been bargained, and the employee is ordinarily bound by the result of the procedure according to the finality provisions of the collective bargaining agreement.  *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990); *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983); *Chester v. Washington Metro. Area Trans. Auth*., 335 F. Supp. 2d 57, 64 (D.D.C. 2004); *Payne v. Giant Food, Inc.*, 346 F. Supp. 2d 15, 19 (D.D.C. 2004).

The collective bargaining agreement between the parties in this case contains a *mandatory* grievance and arbitration provision. Plano Decl. Exh. B (CBA Art. 21 ("Grievances and Arbitration")). Under this provision, all disputes "concerning the interpretation of the provisions of this Agreement" including discharge of employees, "*shall*" be handled through the final and binding grievance and arbitration process. CBA Art. 21 § 21.1. In the present action, plaintiff failed to exhaust this mandatory process. Although plaintiff's Union actually did file a grievance on plaintiff's behalf, plaintiff voluntarily withdrew from the process and no arbitration was ever pursued by the Union. *See* Plano Decl. ¶ 7.

An employee who fails to use mandatory grievance procedures is ordinarily barred from maintaining an independent action against his employer in federal court for breach of the collective bargaining agreement due to his failure to exhaust his contractual remedies. *Terry*, 494 U.S. at 564; *Chester*, 335 F. Supp. 2d at 64-65; *Bush*, 267 F. Supp. 2d at 46-47 (citing *Majewski v. B'nai B'rith Int'l*, 721 F.2d 823, 824 (D. C. Cir. 1983)). The *only* exceptions to this exhaustion rule are when the Company "effectively repudiated the grievance procedures of the CBA," *Chester*, 335 F. Supp. 2d at 64, and where the union representing the employee in the grievance or arbitration procedure acts in such a discriminatory, dishonest, arbitrary or perfunctory fashion as to breach its duty of fair representation in the processing of the employee's grievance. *DelCostello*, 462 U.S. at 164 (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)). *See also Payne*, 346 F. Supp. 2d at 19; *Chester*, 335 F. Supp. 2d at 64-65.

If this occurs, the employee may then bring a "hybrid" action in federal court. Such a suit is termed "hybrid" because it combines a claim for breach of the collective bargaining agreement under Section 301 of the LMRA, 29 U.S.C. § 185(a), with a claim against the union for breach of the duty of fair representation under the National Labor Relations Act ("NLRA").

*Brown v. Gino Morena Enterprs.*, 44 F. Supp. 2d 41, 44 & n.2 (D.D.C. 1999) (citing *O'Hara v. District No. 1-PCD, MEBA*, 56 F.3d 1514, 1520 (D.C. Cir. 1995)).  The two claims are "inextricably interdependent."  *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 84 n.8 (1989).  *See also Chester,* 335 F. Supp. 2d at 65 (same) (quoting *DelCostello*, 462 U.S. at 164-65).

As the Supreme Court explained in *Teamsters v. Terry*,

> Whether the employee sues both the labor union and the employer or only one of those entities, he ***must*** prove the same two facts to recover money damages:  that the employer's action violated the terms of the collective bargaining agreement ***and*** that the union breached its duty of fair representation.

494 U.S. at 564 (emphasis added).  *See also Vaca*, 386 U.S. at 186 ("[T]he wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, *provided the employee can prove that the union as bargaining agent, breached its duty of fair representation in its handling of the employee's grievance*.") (emphasis added).  *See also Chester,* 335 F. Supp. 2d at 65 (same).

Nowhere in his Complaint does plaintiff allege that he exhausted his contractual remedies, that the Company repudiated the grievance procedure, or that his Union breached the duty of fair representation in the handling of his grievance.  Because plaintiff has failed to plead these essential elements of his claim, plaintiffs' Section 301 breach of contract claim ***must*** be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  *See, e.g., Chester,* 335 F. Supp. 2d at 65 (dismissing claim under Rule 12(b)(6) where plaintiff failed to allege that defendant repudiated the CBA grievance procedures or that his union breached its duty of fair representation); *Bush*, 267 F. Supp. 2d at 47 (motion to dismiss granted where plaintiff failed to alleged that he "pursued his grievance with the Union or took any action to exhaust the procedures in the CBA").

**CONCLUSION**

For all the foregoing reasons, defendant Giant of Maryland LLC respectfully requests that the Court grant its motion dismiss and enter an order dismissing the complaint, in its entirety, with prejudice.

Dated: January 5, 2006

_____/s/ Henry A. Platt_____
Edward R. Levin (D.C. Bar No. 7823)
Henry A. Platt (D.C. Bar. No. 425994)
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Ave., N.W., Ste. 1000
Washington, DC 20037-1922
(202) 333-8800

Attorneys for Defendant
Giant of Maryland, LLC

LEXSEE

**CORDELL MARTIN, et al., Plaintiffs, v. HOLIDAY UNIVERSAL, INC., et al., Defendants**

**Civil No. JH-90-1188**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

*1990 U.S. Dist. LEXIS 18102; 54 Fair Empl. Prac. Cas. (BNA) 61; 55 Empl. Prac. Dec. (CCH) P40,361*

**October 3, 1990, Decided
October 3, 1990, Filed**

**JUDGES:** [*1]

Joseph C. Howard, United States District Judge.

**OPINIONBY:**

HOWARD

**OPINION:**

*MEMORANDUM OPINION*

Pending before the court is defendants' motion to dismiss plaintiffs' first amended complaint. Plaintiffs have opposed the motion and defendants replied. No hearing is necessary to resolve the legal questions presented. Local Rule 105.6.

The two count amended complaint was filed by six plaintiffs who allege violations of the 1866 Civil Rights Act, *42 U.S.C. § 1981*, and the District of Columbia Human Rights Act, D.C. Code Ann. § § 1-2501 to 1-2557 (1987) ("DCHRA"). These causes of action center generally on the defendants' alleged corporate policy of maintaining segregated health clubs and the employment discrimination which flows from it.

The standard for a motion to dismiss is well known. On a motion to dismiss, the inquiry is whether the allegations are "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." as required by *Fed. R. Civ. P. 8(a)(2)*. *Bolding v. Holshouser, 575 F.2d 461, 464 (4th Cir. 1978)*, cert. denied, *439 U.S. 837 (1978)*. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff [*2] can prove no set of facts in support of his claims which would entitle him to relief." *Conley v.*

*Gibson, 355 U.S. 41, 45-46 (1957)* (footnote omitted). Also, on a motion to dismiss, the court is required to view the facts in the complaint in a light most favorable to the plaintiffs. *Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)*. Further, the defense of limitations will only be successful when the running of the statute is apparent from the face of the complaint. *Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 119 (9th Cir. 1980)*.

Defendants' motion to dismiss focuses on four main arguments. First, the defendants argue that the recent Supreme Court case of *Patterson v. McLean Credit Union, 57 U.S.L.W. 4705* (June 15, 1989), disposes of many of plaintiffs' § 1981 claims, and second that the appropriate statute of limitations for the § 1981 claims bars recovery. Third, defendants assert that this court lacks subject matter jurisdiction of over the DCHRA claims, and finally that the DCHRA claims are barred by the statute of limitations. The court will address each argument in turn.

Count One (Section 1981)

The first argument in support of defendants motion to dismiss [*3] focuses on the scope of the Supreme Court's holding in Patterson. Generally, defendants argue that after Patterson, the plaintiffs can no longer state a cause of action under § 1981. Plaintiffs, of course, argue that the ramifications of Patterson are not as broad as defendants suggest.

Section 1981 of Title 42 of the United States Code provides that all "persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." However, this statute "cannot be construed as a general proscription of racial discrimination

in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." *Id. at 4708.* Therefore, § 1981 "prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms." Id. Conduct, after the contractual relationship has been established and unrelated to an employee's right to enforce her contract, may not ordinarily be the basis for a § 1981 claim. *Id. at 4709.*

All of the plaintiffs allege that **[\*4]** they were refused, on discriminatory grounds, the opportunity to contract with defendants for employment on equal terms in violation of § 1981. As this states a cause of action pursuant to § 1981, the motion to dismiss will be denied. The remaining allegations in the amended complaint concerning working conditions are simply evidence of this and will remain in the complaint as surplus. *Id. at 4710.*

The plaintiffs, Cordell Martin and Raphael McKeython, allege an additional basis for their § 1981 claims based on the denial of their promotion and transfer requests. In Patterson, the Supreme Court held that under certain circumstances an employer's failure to promote is actionable under § 1981. The key determination "depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." Id. If the change does involve a new contract, "then the employer's refusal to enter the new contract is actionable under § 1981." Id. Accordingly, these allegations state a cause of action and further factual scrutiny may be appropriate. n1

n1 In any event, these allegations are simply corroborative of the more general claim based on the refusal to form the original employment contract on a nondiscriminatory basis.

**[\*5]**

Two plaintiffs, Cordell Martin and Myrna Pitts, also allege that the discriminatory discharge from their employment with defendants violated § 1981. Defendants contend that this is postformation conduct and is therefore outside of the scope of § 1981 after Patterson. This issue has received considerable attention, but the district and circuit courts have not resolved the question uniformly. Other than the vacated holding in *Patterson v. McLean Credit Union, 805 F.2d 1143, 1145 (4th Cir. 1986),* there is no definitive precedent in the Fourth Circuit. n2

n2 Even though the Fourth Circuit's opinion was vacated, according to the Fourth Circuit "claims of racially discriminatory hiring, firing, and promotion go to the very existence and nature of the employment contract and thus fall easily within § 1981's protection." *Patterson, 805 F.2d at 1145.*

The court recognizes that sound arguments can be made for and against the holding that discriminatory discharge is actionable under § 1981. However, the court holds **[\*6]** the thorough analysis in *Hicks v. Brown Group, Inc., 902 F.2d 630 (8th Cir. 1990),* is the most compelling. In Hicks, the Eighth Circuit carefully considered the Supreme Court's holding in *Patterson, Hicks, 902 F.2d at 635-38,* as well as Supreme Court precedent after *Patterson. Hicks, 902 F.2d at 637.* In addition, Hicks analyzed the cases reaching a contrary result, *id. at 640 n. 24,* the relevant legislative history, *id. at 642-48,* and the purpose of § 1981. *Id. at 638-42.* After considering all of these factors, the court reached the conclusion that § 1981 permits a cause of action for retaliatory discharge. *Id. at 648.*

The court chooses to follow Hicks for several reasons. First; the reasoning of Hicks is extensive. On the other hand, the cases that hold to the contrary of Hicks end the analysis with a mechanical and uncritical application of the language in Patterson. That a more subtle analysis is appropriate is indicated by Patterson itself. For example, certain postformation conduct, such as the failure to promote, is actionable under § 1981, *Patterson, 57 U.S.L.W. at 4710,* as well as postformation conduct which impairs **[\*7]** an employee's right to enforce his or her contract. *Id. at 4709.* In addition, if this issue were as obvious as these courts suggest, then the Supreme Court's conspicuous and repeated avoidance of deciding this question is curious indeed. *Lytle v. Household Mfg., Inc., 58 U.S.L.W. 4341, 4343 n. 2* (March 20, 1990).

Second, in the context of a motion to dismiss, it is difficult to carefully analyze precedent because the facts of this case are not in issue. The sole question before the court is whether the plaintiffs have stated a cause of action. Inasmuch as the plaintiffs have colorably stated a cause of action, it cannot be said to a certainty that the plaintiffs would be entitled to no relief under any set of facts which could be proved in support of the § 1981 claims. *Adams v. Bain, 697 F.2d 1213, 1216 (4th Cir. 1982).*

Finally, plaintiff Cordell Martin alleges a violation of § 1981 based on his retaliatory discharge from his employment with defendants. Specifically, he contends that he was threatened with termination for speaking out

against defendants' discriminatory policies. Once again, defendants make much of the holding in Patterson and argue that this postformation [**8] conduct may not be the basis for a § 1981 violation. Although the law is unsettled on this issue, the court disagrees with defendants' argument.

In the context of retaliatory discharge, the right to enforce a contract is even more clearly implicated than in the case of discriminatory discharge. When an employer retaliates against an employee by threatening discharge when the employee is attempting to enforce his § 1981 rights, the employer's action may intimidate the employee into refraining from resorting to the legal process to vindicate his rights. *Hicks, 902 F.2d at 638 n. 20; Malhotra v. Cotter & Co., 885 F.2d 1305, 1312 (7th Cir. 1989); Fowler v. McCrory Corp., 727 F.Supp. 228, 231-32 (D. Md. 1989).* Thus, Cordell Martin states a cause of action based on § 1981's guarantee of the right to enforce contracts equally. n3

> n3 In any event, these allegations may simply be used as evidence of the non-neutral nature of the original employment contract.

Defendants also attack Count One of the amended complaint [**9] by arguing that a one year statute of limitations applies to this case, thus barring many of plaintiffs' claims. The court holds that the three year period applies for limitations purposes. *Banks v. Chesapeake & Potomac T. Co., 802 F.2d 1416, 1421-23 (D.C. Cir. 1986).* In addition, the claims are not barred by limitations based on the allegation of continuing violations of § 1981. *Williams v. Norfolk & W. Ry. Co., 530 F.2d 539, 542 (4th Cir. 1975); United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977).* Therefore, the amended complaint on its face does not indicate that the statute of limitations has run and dismissal is inappropriate.

Count Two (DCHRA)

Defendants argue next that count two of the amended complaint should be dismissed because the DCHRA does not apply to the claims of the plaintiffs. Specifically, defendants assert that the DCHRA only applies to discriminatory acts within the District of Columbia. Therefore, because plaintiffs in this case were not hired in Washington, D.C., were not employed in Washington, D.C., and did not experience any discrimination in Washington, D.C., these claims should be dismissed pursuant to *Fed. R. Civ. P. 12(b)(1).*

Defendants [**10] are correct that the DCHRA does not apply to acts occurring outside the District of Columbia. The only case addressing this question assumed but did not decide, that this was the law. *Matthews v.* *Automated Business Sys. & Serv., Inc., 558 A.2d 1175, 1180 n. 8 (D.C.App. 1989).* According to the Court of Appeals for the District of Columbia, "the critical factual issue bearing on jurisdiction is whether these events took place in the District." *Id. at 1180.* Thus, the remaining question is whether the complaint alleges that each plaintiff was subjected to discriminatory acts within the District of Columbia. n4

> n4 The plaintiffs' opposition to the motion to dismiss suggests that "plaintiffs allege a sufficient District of Columbia nexus." That the DCHRA requires a nexus test to establish jurisdiction was expressly rejected by the District of Columbia Court of Appeals. *Matthews, 558 A.2d at 1181.* In addition, the court notes that plaintiffs do not dispute that the DCHRA only applies to discriminatory acts within the District of Columbia.

[**11]

In this case each plaintiff alleges that he or she was discriminated against by the refusal to hire, transfer or promote them into facilities located in the District of Columbia. (Amended Complaint paragraphs 85, 86 and 87). The fact that defendants made the discriminatory decisions outside of Washington, D.C., and that the plaintiffs applied for employment outside of Washington, D.C. will not shield defendants from liability. *Green v. Kinney Shoe Corp., 704 F. Supp. 259, 260 (D.D.C. 1988).* The discriminatory act in this case consisted of not transferring or hiring plaintiffs in or to the District of Columbia facilities. Accordingly, both Green and Matthews support subject matter jurisdiction over these claims. n5

> n5 It is true that this problem could be resolved against plaintiffs by focusing on the location of the discriminatory decision; namely in Maryland. However, in light of the absence of controlling authority directly on point, the court will resolve this issue in favor of plaintiffs and not dismiss their claims based solely on a judicial interpretation of dicta. Furthermore, the defendants do not raise a factual dispute that the District of Columbia facilities are at issue in this count of the amended complaint.

[**12]

Defendants also argue that the correct application of the District of Columbia's choice of law principles precludes the DCHRA cause of action. However, in light of the court's holding that discrimination occurred within

Case 1:05-cv-02473-JDB    Document 8    Filed 01/06/2006    Page 21 of 32

Page 4

1990 U.S. Dist. LEXIS 18102, *; 54 Fair Empl. Prac. Cas. (BNA) 61;
55 Empl. Prac. Dec. (CCH) P40,361

Washington, D.C., the defendants' interest analysis is no longer persuasive. *Rong Yao Zhou v. Jennifer Mall Restaurant, Inc., 534 A.2d 1268, 1270 (D.C. 1987).*

The last of defendants' arguments focuses, once again, on the statute of limitations. The DCHRA requires the filing of an action within one year of the occurrence of the unlawful discriminatory practice. *Davis v. Potomac Elec. Power Co., 449 A.2d 278, 280-81 (D.C. 1982).* That period begins to run at the time "of the occurrence of the unlawful discriminatory practice, or the discovery thereof." D.C. Code § 1-2544(a) (1987). Defendants argue, therefore, that any act which is alleged to have occurred prior to June 14, 1988, is barred by limitations. Plaintiffs, on the other hand, contend that they have alleged a continuing course of discrimination which allows all claims to survive.

In support of the argument that there was a continuing course of conduct, plaintiffs rely on a line of federal cases permitting [*13] this theory in § 1981 cases. See e.g., *Williams, 530 F.2d at 539.* However, plaintiffs do not suggest why these § 1981 cases should be applied in the DCHRA context. This is particularly important in light of the District of Columbia Court of Appeal's recent expression that the federal Civil Rights Act is not the counterpart of the DCHRA, and the DCHRA will be interpreted differently. *Anderson v. United States Safe Deposit Co., 552 A.2d 859, 862 (D.C.App. 1989).*

Plaintiffs also cite *Jones v. Howard Univ., 574 A.2d 1343 (D.C.App. 1990),* for their position. In that case the District of Columbia Court of Appeals discussed precedent which distinguished, for purposes of the statute of limitations, "multiple breaches of a continuing duty and a single breach." *Id.* at 1347 (citing *Kyriakopoulos v. George Washington Univ., 866 F.2d 438 (D.C. Cir. 1989)).* The court held in Jones that the plaintiff had only been discharged once, thus it was a single breach and

there would be no tolling of the limitations period. In the instant case, however, plaintiffs allege a continuing duty to promote, transfer or hire by the Washington, D.C. facilities. (Amended Complaint paragraphs [*14] 85, 86 and 87). Therefore, every day in which the plaintiffs were not promoted, transferred or hired was a reaffirmation of the discriminatory policy. *Jones, 574 A.2d at 1348.*

This conclusion is also supported by the language of the DCHRA. Specifically, the period of limitations begins to run at the time "of the occurrence of the unlawful discriminatory practice, or the discovery thereof." D.C. Code § 1-2544(a) (1987) (emphasis added). In this case the unlawful discriminatory practice was refusing to promote, transfer or hire in the District of Columbia facilities. As each plaintiff alleges that the practice continues to this day, and that he or she was not promoted, transferred or hired after June 14, 1988, (Amended Complaint paragraphs 85, 86 and 87), the statute of limitations does not bar this cause of action.

The court will enter a separate order.

*ORDER* - October 3, 1990, Filed

In accordance with the Memorandum Opinion of even date, it is this 3d day of October, 1990, by the United States District Court for the District of Maryland,

ORDERED:

1) that defendants' motion to dismiss the amended complaint BE, and the same hereby IS, DENIED;

2) that this case proceed [*15] according to the Scheduling Order; and

3) that the Clerk of Court mail copies of this Order and the foregoing Memorandum Opinion to all counsel of record.

LEXSEE 2000 US DIST LEXIS 4419

**ANTONIO CARVALHO, Plaintiff, v. INTERNATIONAL BRIDGE & IRON CO., Defendant.**

**Civil Action No. 3:99V605(CFD)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2000 U.S. Dist. LEXIS 4419*

**February 25, 2000, Decided**

**DISPOSITION:** **[*1]** GRANTED IN PART AND DENIED IN PART.

**COUNSEL:** For ANTONIO CARVALHO, plaintiff: Ronald E. Lasky, Michael J. Melly, Ronald E. Lasky & Associates, New London, CT.

For INTERNATIONAL BRIDGE & IRON CO, defendant: Margaret J. Strange, Richard L. Bush, Jackson, Lewis, Schnitzler & Krupman, Hartford, CT.

**JUDGES:** CHRISTOPHER F. DRONEY, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** CHRISTOPHER F. DRONEY

**OPINION:**

RULING ON DEFENDANT'S MOTION TO DISMISS

Introduction

The plaintiff in this action seeks damages under *Conn.Gen.Stat. § 31-290a*, which prohibits employers from retaliating against employees who exercise their rights under the Connecticut Workers' Compensation Act, and common law causes of action in a complaint originally filed in the Connecticut Superior Court. The defendant removed the action, asserting that this Court has original jurisdiction over the action pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), codified at *29 U.S.C. § 185*. The defendant claimed removal was proper because resolution of each of the six counts of the complaint required the interpretation of a collective bargaining agreement ("CBA").

Pending is the defendant's **[*2]** motion to dismiss or, alternatively, for summary judgment (doc. ## 10–1 & 10–2), in which the defendant argues, inter alia that the Court should dismiss every count of the complaint because the state law claims are preempted by Section 301 of the LMRA or because they do not state a claim upon which relief can be granted. The plaintiff argues that the state law claims are sufficiently pled and do not require the interpretation of the CBA and, therefore, are not preempted by Section 301 of the LMRA.

Background n1

n1 The recited background facts are taken from the complaint. In ruling on the motion to dismiss, the Court does not treat the motion as one for summary judgment. See *Krijn v. Pogue Simone Real Estate, Co., 896 F.2d 687, 689 (2d Cir. 1990); see also Maggette v. Dalsheim, 709 F.2d 800, 802 (2d Cir. 1983).* The Court has only considered the complaint and the CBA in reaching a decision on the defendant's motion. See *Argento v. Airborne Freight Corp., 933 F. Supp. 373, 376 fn. 2 (S.D.N.Y. 1996)* (appropriate to consider the collective bargaining agreement in ruling on a Rule 12(b)(6) motion to dismiss raising issues of LMRA preemption); see also *Wilhelm v. Sunrise Northeast, Inc., 923 F. Supp. 330 (D.Conn. 1995)* (court considered collective bargaining agreement in ruling on 12(b)(6) motion in which defendant argued plaintiff's common law claims, including breach of contract and wrongful discharge, were preempted by section 301 of the LMRA.)

**[*3]**

According to the complaint, n2 the plaintiff, Antonio Carvalho ("Carvalho"), began working for the defendant International Bridge & Iron Co. ("International") in October, 1996. Carvalho's employment with International was subject to the CBA entered into between International and Carvalho's union, the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers.

n2 For the purposes of deciding the motion to dismiss, the court assumes as true the allegations of the complaint. See *Finnegan v. Campeau Corp., 915 F.2d 824, 826 (2d Cir. 1990).*

Between December, 1996, and January, 1998, Carvalho suffered three job-related injuries. As a result of these injuries, Carvalho took time off from work and received treatment and benefits under the Connecticut Workers' Compensation Act (*Conn.Gen.Stat. § 31-275,* et seq.).Upon his return to work he was reassigned to light duty job assignments and was allowed to take paid time off from work to attend physical therapy sessions. **[*4]**

After returning to work following his last injury, Carvalho was assigned to cleaning restrooms and picking up litter outside International's place of business. Carvalho claims that, during this time, he was harassed, threatened, and verbally abused by two of his supervisors because of his prior workers' compensation claims.

On July 24, 1998, Carvalho was notified that his employment was terminated because he had not attended two physical therapy appointments which he had reported he attended. Carvalho was given no opportunity to explain, given his last paycheck, and ordered to leave. Carvalho denied that he missed the two appointments, provided International with explanations and asked that he be reinstated. International refused to reinstate Carvalho and this action followed.

In his complaint, Carvalho alleges that the conduct of International (and its supervisors) violated the Connecticut Workers' Compensation Act because it was taken in retaliation for his making claims under the Act (count one), constituted tortious wrongful discharge in violation of public policy (count two), breached the implied covenant of good faith and fair dealing (count three), breached the CBA (count **[*5]** four), constituted intentional infliction of emotional distress (count five), and constituted negligent infliction of emotional distress (count six). As mentioned above, International claims that all six counts are preempted by section 301 of the LMRA, or, alternatively, fail to state a claim upon which relief can be granted.

Discussion

A. 12(b)(6) Standard

In deciding a motion to dismiss, a court must construe in favor of the pleader any well-pleaded allegations in the complaint. *Finnegan v. Campeau Corp., 915 F.2d 824, 826 (2d Cir. 1990).* The issue on a motion to dismiss is not whether the nonmoving party will prevail, but whether he is entitled to offer evidence to support his claims. *United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990)* (citing *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)).* A court may dismiss the complaint only where "it appears beyond doubt that the pleader can prove no set of facts in support of the claim which would entitle him to relief." *Yale New Haven Hosp., 727 F. Supp. at 786* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).* **[*6]** "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).*

B. LMRA Preemption

Section 301 of the LMRA provides this Court with subject matter jurisdiction over suits concerning violations of collective bargaining agreements. See *Wilhelm v. Sunrise Northeast, Inc., 923 F. Supp. 330, 334 (D.Conn. 1995)* (citing *Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988))* (citation omitted); see also *Baldracchi v. Pratt & Whitney Division, United Technologies Corp., 814 F.2d 102, 104 (2d Cir. 1987); Dittman v. Gen'l Motors Corp.-Delco Chassis Div., 941 F. Supp. 284, 288 (D.Conn. 1996); Anderson v. Coca Cola Bottling Co., 772 F. Supp. 77, 80 (D.Conn. 1991).* Section 301 reflects the intent of Congress to create a uniform body of federal labor law to remedy such violations, **[*7]** rather than leaving redress to inconsistent, state-specific rules. See *Wilhelm, 923 F. Supp. at 334* (citing *Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209-10, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1984));* see also *Dittman, 941 F. Supp. at 288; Anderson, 772 F. Supp. at 80.* As a result, disputes over terms in a collective bargaining agreement and the conduct subject to the agreement must be resolved according to the LMRA. See *Wilhelm, 923 F. Supp. at 334* (citing *Lueck, 471 U.S. at 211);* see also *Anderson, 772 F. Supp. at 80.*

"When resolution of a state-law claim depends upon interpretation of a collective bargaining agreement, the claim must either be treated as a § 301 claim or dismissed as preempted by federal labor-contract law." *Wilhelm, 923 F. Supp. at 334* (citing *Allis-Chalmers, 471 U.S. at 221* and *Lingle, 486 U.S. at 405-06);* see also *Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997); Dittman, 941 F. Supp. at 288; Anderson, 772 F. Supp. at 80.* **[*8]** However, if a state-law claim can be resolved without interpreting a collective bargaining agreement, section 301 does not preempt the claim. See *Wilhelm, 923 F. Supp. at 334* (citing *Lingle, 486 U.S. at 405-06);* see

also *Dittman, 941 F. Supp. at 288; Anderson, 772 F. Supp. at 80.* n3

> n3 "However, 'the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.'" *Foy, 127 F.3d at 233* (quoting *Livadas v. Bradshaw, 512 U.S. 107, 124, 129 L. Ed. 2d 93, 114 S. Ct. 2068 (1994)*).

To determine whether Carvalho's claims are preempted by section 301, the Court must examine whether the claims are independent of any rights established by the collective bargaining agreement or whether the claims are intertwined with the terms of the collective bargaining agreement. See *Wilhelm, 923 F. Supp. at 334* (citing **[*9]** *Allis-Chalmers, 471 U.S. at 213*). "If resolution of the plaintiff's claim hinges on the court's interpretation of the collective bargaining agreement, the claim is preempted regardless of whether it sounds in contract or tort." *Wilhelm, 923 F. Supp. at 334* (citing *Dulay v. United Technologies Corporation, 1994 U.S. Dist. LEXIS 9051, 1994 WL 362149, *2 (D.Conn.)* (Cabranes, C.J.). However, section 301 should not be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law. See *Foy, 127 F.3d at 233* (quoting *Livadas, 512 U.S. at 123*).

With these standards in mind, the Court examines each of the plaintiff's counts to determine whether it is preempted by section 301 of the LMRA or, alternatively, subject to dismissal for failure to state a claim upon which relief can be granted.

C. The Six Counts of the Complaint

    1. Violation of *Conn.Gen.Stat. § 31-290a* — Count 1

In the first count of his complaint, Carvalho alleges that International retaliated against him for exercising his rights under the Connecticut Workers' Compensation Act in violation of *Conn.Gen.Stat. § 31-290a.* **[*10]** n4 Specifically, Carvalho claims that he was subjected to various forms of harassment and ultimately fired because he had received workers' compensation benefits following each of his three job-related injuries.

> n4 The statute is entitled "Discharge or discrimination prohibited. Right of action" and provides:
>
> > (a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has

filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

> (b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. An employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court; or (2) file a complaint with the chairman of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the chairman shall select a commissioner to hear the complaint, provided any commissioner who has previously rendered any decision concerning the claim shall be excluded. The hearing shall be held in the workers' compensation district where the employer has its principal office. After the hearing, the commissioner shall send each party a written copy of his decision. The commissioner may award the employee the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he otherwise would have been eligible if he had not been discriminated against or discharged. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees. Any party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court.

**[*11]**

In *Ford v. Blue Cross & Blue Shield of Connecticut,*

*Inc.*, 216 Conn. 40, 578 A.2d 1054 (Conn. 1990), the Connecticut Supreme Court adopted the test set forth in *McDonnell Douglas Corporation v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*, and its progeny as the appropriate analytical framework for evaluating a claimed violation of *Conn.Gen.Stat. § 31-290a*, where an employer is alleged to have discriminated against an employee for seeking workers' compensation benefits. Under Ford the plaintiff must first show a prima facie case of discrimination. See *Ford, 578 A.2d at 1060* (citing *McDonnell Douglas, 411 U.S. at 802.)* To establish the prima facie case, the plaintiff must present evidence that supports an inference of unlawful discrimination. See *Ford, 578 A.2d at 1060* (citing *Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)).* Once the plaintiff meets this burden, the burden shifts to the employer to rebut the inference of discrimination by producing evidence of a legitimate, nondiscriminatory [*12] reason for its actions. See *Ford, 578 A.2d at 1060* (citing *McDonnell Douglas, 411 U.S. at 802).* If the employer produces such an explanation, the inference is rebutted and the plaintiff must then prove his case in one of two ways: (1) directly, by persuading the fact finder that a discriminatory reason motivated the employer or, (2) indirectly, by showing that the employer's proffered explanation is "unworthy of credence." See *Ford, 578 A.2d at 1060* (citing *Burdine, 450 U.S. at 256).*

Accordingly, in order for Carvalho to prevail on his first claim for relief he would first have to show a prima facie case of discrimination based upon his filing of workers' compensation claims. Then — assuming International offered a legitimate non-discriminatory reason for its actions — he would have to prove that a discriminatory reason motivated International or prove that International's proffered legitimate non-discriminatory reason for its employment action was pretextual.

International argues that under the analytical framework set forth in Ford, the Court would be required to interpret the terms of the CBA. Specifically, [*13] International argues, assuming Carvalho proves his prima facie case, its non-discriminatory reason for terminating his employment will be that it had just cause under the CBA to do so, including Carvalho's absences from the physical therapy appointments. In evaluating that reason, International maintains, the Court must look to and interpret the definition of "just cause" in the CBA.

In *Baldracchi v. Pratt & Whitney Division, United Technologies Corp., 814 F.2d 102 (2d Cir. 1987)*, the Second Circuit rejected the same argument which International now makes, that is, in order for the defendant to establish that it terminated the employee for

a legitimate nondiscriminatory reason, the court would have to interpret the "just cause" provision of the CBA. *Id. at 105.* n5 The Court held that the employer's liability for retaliatory discharge under section 31-290a would not be determined by reference to the CBA. Id. Rather, while the defendant would have to show that it had a legitimate non-discriminatory reason for firing Baldracchi, this would not require the employer to establish that the grounds for termination amounted to "just cause" under the CBA. Id. [*14] This is because an employee's rights under section 31-290a are independent of the CBA. *Id. at 107.*

> n5 Although Baldracchi was decided prior to Ford, the Second Circuit evaluated the plaintiff's section 31-290a claim and the defendant's preemption argument in light of the burden shifting principles announced in McDonnell Douglas and eventually adopted in Ford.

In *Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988)*, the U.S. Supreme Court reached the same conclusion when examining a Illinois plaintiffs common law claim of retaliatory discharge for filing a claim under that state's workers' compensation act. *Id. at 409-410.* In holding that the claim was not preempted by section 301 of the LMRA, the Court noted that "even if dispute resolution pursuant to the collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, [*15] as long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes." *Id. at 409-410.*

In the instant case, the resolution of Carvalho's section 31-290a claim will not require the interpretation of the CBA. His rights under the Connecticut Workers' Compensation Act are independent of his rights under the CBA. Enforcement of those rights, through section 31-290a, does not depend upon any particular interpretation of the CBA or its application. As was the case in Baldracchi and Lingle, some of the underlying facts relating to his termination that are relevant to the resolution of his section 31-290a claim may also be relevant to resolving a dispute concerning whether he was fired for "just cause" within the meaning of the CBA. However, that does not mean that the "just cause" provision of the CBA affects the section 31-290a claim.

Accordingly, the defendant's motion is denied as to count one of the complaint. n6

n6 The Connecticut Superior Court will determine, on remand, whether the conduct complained of constitutes a violation of *Conn. Gen. Stat. § 31–290a.*

**[*16]**

2. Tortious Wrongful Discharge — Count 2

In count two of his complaint, Carvalho alleges that he was wrongfully discharged in violation of public policy. The public policies he claims were violated are the protection of the rights of workers not to be retaliated against for filing workers' compensation claims and federal and state laws prohibiting discrimination against disabled persons. International argues that resolution of this claim would also require the interpretation of the CBA because its employment termination process is set forth in a multi-step procedure contained in the CBA and, therefore, any claim that Carvalho was wrongfully terminated would have to comply with the procedure set forth in the CBA. International also argues that count two should be dismissed because Carvalho was not an "at will" employee at the time of his termination and, under Connecticut law, the tort of wrongful discharge is only available to "at will" employees. Finally, International argues that Carvalho is not entitled to bring a wrongful discharge claim in order to redress violations of the public policies he has identified because there are statutorily created causes of action available to **[*17]** him.

An at-will employee may bring an action for wrongful discharge when the termination of his employment contravenes public policy **and** he would otherwise be without a remedy. See *Burnham v. Karl and Gelb, P.C., 50 Conn. App. 385, 717 A.2d 811, 816 (Conn.App. 1998)*(emphasis added); *Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643, 501 A.2d 1223, 1226 (Conn.App. 1985); Anderson v. Coca Cola Bottling Co., 772 F. Supp. at 82* (citing *Magnan v. Anaconda Indus., Inc., 193 Conn. 558, 479 A.2d 781, 785 (Conn. 1984)* and *Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 427 A.2d 385, 387 (Conn. 1980); see also Thomas v. St. Francis Hospital and Medical Center, 990 F. Supp. 81, 90 (D.Conn. 1998); Wilhelm v. Sunrise Northeast, Inc., 923 F. Supp. at 336.* n7 Under Connecticut law, this cause of action is only available to workers who could be discharged at will. See *Wilhelm, 923 F. Supp. at 336;* (citing *D'Ulisse–Cupo v. Bd. of Dir. of Notre Dame High School, 202 Conn. 206, 520 A.2d 217, 220 fn.1 (Conn. 1987)); see also Tomlinson v. Bd. of Ed., 226 Conn. 704, 629 A.2d 333, 347 fn. 18 (Conn. 1993);* **[*18]** *Appleton v. Bd. of Ed. of the Town of Stonington, 53 Conn. App. 252, 730 A.2d 88, 95 (Conn.App. 1999).* An individual whose employment is contractually protected by a just cause provision in a collective bargaining agreement is not an "at-will" employee and, therefore, may not bring an action for wrongful discharge. See *Wilhelm, 923 F. Supp. at 336* (citations omitted); see also *Tomlinson, 629 A.2d at 347 fn. 18* (tenured teacher whose employment contract was governed by a state statute and a collective bargaining agreement with the school was not an "at-will" employee and, therefore, could not assert a common law claim for wrongful discharge); *Appleton, 730 A.2d at 95* (in considering a potential claim for wrongful discharge by a tenured teacher subject to the protections of a collective bargaining agreement, the court relied on Tomlinson and reached the same conclusion). But see *Anderson, 772 F. Supp. at 83* (holding "not every claim of wrongful discharge is necessarily preempted by § 301" and suggesting an employee subject to the protections of a collective bargaining agreement could assert **[*19]** claim for wrongful termination).

n7 The cause of action is intended to place public policy limitations on the traditional employment at-will doctrine in an effort to balance the competing interests of employers and employees. *Daley v. Aetna Life and Casualty Company, 249 Conn. 766, 734 A.2d 112, 131 (Conn. 1999)* (citing *Antinerella v. Rioux, 229 Conn. 479, 642 A.2d 699 (Conn. 1994)).*

Equally fatal to Carvalho's wrongful discharge claim is the availability of statutory causes of action to vindicate the public policies he claims were violated by International when it terminated his employment. Because the Connecticut Workers' Compensation Act, the Americans with Disabilities Act, and the Connecticut Fair Employment Practices Act each provide retaliation causes of action for this situation, a common law wrongful discharge claim on the same basis is not available. A number of Connecticut decisions support this view.

In *Burnham v. Karl and Gelb, P.C., 50 Conn. App. 385, 717 A.2d 811, 816 (Conn.App. 1998),* **[*20]** for example, the plaintiff alleged that her employer had terminated her employment because she had reported unsafe workplace conditions to the Occupational Safety and Health Administration ("OSHA"). She brought an action against her employer alleging, inter alia wrongful discharge in violation of public policy. The court in Burnham held that the tort of wrongful discharge was not available to the plaintiff because the Occupational Safety and Health Act ("the Act") provided a private cause of action for retaliation for reporting unsafe work conditions to OSHA. *Burnham, 717 A.2d at 816.* The Burnham court concluded that because the Act provided a private cause of action which enabled aggrieved employees to vindicate the important public policy of ensuring that they would not be

terminated in retaliation for reporting work place safety concerns, there was no need for a separate common law tort action — such as wrongful discharge — to protect that same public policy. Id.

In *Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643, 501 A.2d 1223, 1226 (Conn.App. 1985),* the plaintiff alleged that his employer had terminated him because of his **[*21]** race. The plaintiff asserted claims for wrongful discharge and violation of the Connecticut Fair Employment Practices Act. With respect to the common law wrongful discharge claim, the plaintiff alleged that the defendant's conduct violated Connecticut's public policy regarding employment practices. Id. However, the Atkins court affirmed the trial court decision granting summary judgment in favor of the employer and held that an employee may not bring a common law claim for wrongful discharge unless he would otherwise be without a remedy and permitting the discharge to go unredressed would leave a public policy unvindicated. Id.

The Connecticut Superior Court in *Cowan v. Warner-Lambert Co., 1994 Conn. Super. LEXIS 2841, No. CV90032564S, 1994 WL 645965* (Conn. Super. Ct. Nov. 4, 1994), reached the same conclusion where the plaintiff — like Mr. Carvalho here — asserted a claim for violation of *Conn.Gen. Stat. § 31-290a* and a common law cause of action for wrongful discharge in violation of public policy. The court concluded that because *Conn.Gen.Stat. § 31-290a* provided a means to vindicate the public policy of deterring employer retaliation against employees who exercise their rights under the **[*22]** Connecticut Workers' Compensation Act, the plaintiff was precluded from also asserting a common law claim for wrongful discharge in violation of public policy. Id.; see also *Pucci v. American-Republican, 1994 Conn. Super. LEXIS 1319, No. 118491, 1994 WL 235316,* at *3 (Conn. Super. Ct. 1994) (plaintiff asserted claims for violation of *Conn.Gen.Stat. § 31-290a* and wrongful discharge; court reached same conclusion as Cowan and dismissed wrongful discharge claim); *Flores v. Santoro, 1991 Conn. Super. LEXIS 3040, No. CV90-0442419S, 1991 WL 273309,* at *1 (Conn. Super. Ct. Nov. 26, 1991) (plaintiff asserted claims for violation of *Conn. Gen. Stat. § 31-290a* and wrongful discharge; court reached same conclusion as in Cowan and Pucci); *Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. at 90* (state and federal anti-discrimination laws provided remedy for conduct complained of and, therefore, wrongful discharge claim barred); *Hancock v. The Stop & Shop Co., Inc., 1998 Conn. Super. LEXIS 3744, No. CR9704061S, 1998 WL 951019,* at *2 (CFEPA provided remedy for plaintiff's discrimination claim; therefore, wrongful discharge claim was barred); *Friel v. St. Francis Hosp., 1997 U.S. Dist. LEXIS 17430,* No. CIV.3:97-803(DJS), *1997 WL 694729,*

at *2-3 (D.Conn. Oct. 31, 1997) (plaintiff **[*23]** brought action under Title VII, ADA, and CFEPA, as well as a common law claim for wrongful discharge based on public policy reflected in those statutes; wrongful discharge claim dismissed because the statutes provided redress for the public policy violation); *Brosler v. Food Automation-Service Techniques, Inc., 1997 U.S. Dist. LEXIS 18092,* No. 3:96-2345(DJS), *1997 WL 711438,* at *3 (D.Conn. Aug. 25, 1997) (same result where plaintiff brought action under Title VII and CFEPA, as well as a common law claim for wrongful discharge based on public policy reflected in those statutes); *Dais v. Laidlaw Transit, Inc., 1996 Conn. Super. LEXIS 850, No. CV950146079S, 1996 WL 176370,* at *2 (Conn. Super. Ct. March 29, 1996) (plaintiff brought claim for violation of *Conn.Gen.Stat. § 31-51t* [relating to employee drug testing] and wrongful discharge based on violation of the public policy reflected in that statute; wrongful discharge claim dismissed because the statute provided redress for the public policy violation); *Hernandez v. Standard Mattress Co., 1992 Conn. Super. LEXIS 2377, No. CV910397408S, 1992 WL 205168,* at *3 (Conn. Super. Ct. Aug. 12, 1992) (plaintiff brought Title VII claim and various common law causes of action, including wrongful discharge; court dismissed **[*24]** wrongful discharge claim because racial discrimination complained of was redressed through suit under Title VII and CFEPA). But see *Shearn v. Airborne Freight Corp., 1994 Conn. Super. LEXIS 1216, No. CV930134795, 1994 WL 198009,* at *2 (Conn. Super. Ct. May 12, 1994) (court permitted plaintiff to bring claims for violation of *Conn.Gen.Stat. § 31-290a* and wrongful discharge); *Spagnolo v. Macristy Industries, Inc., 1993 Conn. Super. LEXIS 2780, No. CV92-0451874S, 1993 WL 452243* (Conn. Super. Ct. Oct. 1, 1993) (same).

In the instant case, Carvalho's common law claim for wrongful discharge is based upon the allegation that his employment was terminated in violation of public policy. The public policies he asserts were violated are the protection of the rights of workers not to be retaliated against for filing workers' compensation claims and federal and state laws prohibiting discrimination against disabled persons. However, violations of these public policies can be redressed through existing statutory causes of action contained in the Connecticut Workers' Compensation Act, the Americans with Disabilities Act, and the Connecticut Fair Employment Practices Act. Because Carvalho has available to him statutory causes of action to redress the **[*25]** alleged public policy violations, there is no need for a common law cause of action to vindicate the same public policies; therefore, his wrongful discharge claim is barred.

Accordingly, the defendant's motion is granted as to count two.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing — Count 3

In count three of the complaint, Carvalho alleges that by terminating his employment, International breached the implied covenant of good faith and fair dealing because his termination was in violation of public policy. Carvalho alleges that the relevant public policies are the ones described in count two: protecting the rights of workers not to be retaliated against for filing workers' compensation claims and prohibiting discrimination against disabled persons. International makes the same arguments with respect to dismissal of this count as for count two.

Implied in every contract, including employment contracts, is a covenant of good faith and fair dealing. See *Magnan, 193 Conn. 558, 479 A.2d 781, 787* (Conn. at 1984). However, "the covenant is designed to provide job security to employees who at common law could be fired at will." *Anderson v. Coca Cola Bottling Co., 772 F. Supp. 77, 82 (D.Conn. 1991)* [*26] (citing *Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 999 (9th Cir. 1987)*); see also *Knight v. Southern New England Telephone Corp., 1998 U.S. Dist. LEXIS 15952,* No. 3:97CV1159(WWE), *1998 WL 696014,* at *5 (D.Conn. Sept. 18, 1998). The district court in Anderson held that because unionized employees enjoy job security under their collective bargaining agreement, § 301 preempts a cause of action for breach of the covenant of good faith and fair dealing. See *Anderson, 772 F. Supp. at 82* (citations omitted); see also *Knight, 1998 WL 696014,* at *5; *Jones v. Carolina Freight Carriers Corp., 1997 Conn. Super. LEXIS 3484,* No. CV970570128, 1997 WL 808634, at *4 (Conn. Super. Ct. Dec. 24, 1997).

In *Jones v. Carolina Freight Carriers Corp., supra,* the plaintiff, who was subject to a collective bargaining agreement, alleged that his employment with the defendant had been terminated in retaliation for making claims under the Connecticut Workers' Compensation Act. He brought an action alleging, inter alia, breach of the implied covenant of good faith and fair dealing. n8 See *Jones, 1997 WL 808634,* at *1-2. Relying on Anderson, the Jones court held that section 301 of [*27] the LMRA preempts claims for breach of the implied covenant of good faith and fair dealing where the plaintiff's employment is governed by a collective bargaining agreement. See *Jones, 1997 WL 808634,* at *4.

n8 The action had originally been filed in this court. However, the District Court granted the defendant's motion for summary judgment on several counts of the complaint and remanded the remaining counts to state court. The plaintiff had voluntarily withdrawn his claim for breach of the implied covenant of good faith and fair dealing prior to that ruling and, following remand, renewed that claim.

In the instant case, Carvalho alleges in his complaint that the terms of his employment, including the procedures by which his employment could be terminated and the specified reasons warranting such termination, were governed by the CBA. As in Anderson and Jones, where the plaintiffs were subject to collective bargaining agreements and, therefore, were barred from asserting claims for breach of the [*28] implied covenant of good faith and fair dealing, so too is Mr. Carvalho here. As such, his claim for breach of the implied covenant of good faith and fair dealing is preempted by § 301.

Accordingly, the defendant's motion is granted as to count three of the complaint.

### 4. Breach of Express Contract — Count 4

In count four of his complaint, Carvalho alleges that International breached the CBA by terminating his employment without just cause. International argues that this count of the complaint is preempted by § 301 because the contract which Carvalho alleges it breached is the CBA.

Breach of express contract claims involving employment relationships governed by the terms of a collective bargaining agreement are preempted by section 301 of the LMRA. See *Jones v. Carolina Freight Carriers Corp., 1997 Conn. Super. LEXIS 3484,* No. CV970570128, 1997 WL 808634, at *3 (Conn. Super. Ct. Dec. 24, 1997). The source of such express contractual rights here is the collective bargaining agreement agreed to by International and the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers. See *Wilhelm, 923 F. Supp. at 335;* see also *Jones, 1997 WL 808634,* at *4 (plaintiff's [*29] right to maintain place on seniority list was guaranteed by collective bargaining agreement, therefore, his breach of contract claim was preempted by section 301).

The CBA included a provision that an employee, such as Carvalho, could not be terminated without just cause and set forth a procedure for bringing grievances against the employer. See *Wilhelm, 923 F. Supp. at 335;* see also *Jones, 1997 WL 808634,* at *4. Resolution of the merits of Carvalho's breach of contract claim would necessarily require the Court to interpret the terms and provisions of the agreement upon which the employment relationship was founded, the CBA. See *Wilhelm, 923 F. Supp. at 335;* see also *Anderson, 772 F. Supp. at 81; Jones, 1997 WL 808634,* at *4. Carvalho's claim cannot be resolved without determining just cause under the CBA. *Anderson, 772 F. Supp. at 81.* Therefore, Carvalho's breach of contract claim is preempted by § 301. Id.

Accordingly, the defendant's motion is granted as to count four of the complaint. n9

> n9 The CBA here contains arbitration provisions with which Carvalho was required to comply in the event that he contested the results of his grievance proceedings. It is well settled that, before bringing an action such as this one, Carvalho must exhaust these arbitration procedures and failure to do so warrants dismissal of the action. See *Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563, 47 L. Ed. 2d 231, 96 S. Ct. 1048 (1976).* See also *Dougherty v. American Telephone and Telegraph Co., 902 F.2d 201, 203 (2d Cir. 1990).*

[*30]

5. Intentional Infliction of Emotional Distress — Count 5

Carvalho alleges in count five that International intentionally inflicted emotional distress on him through the alleged verbal abuse, threats, the employment actions by his supervisors, and, ultimately, his termination. International argues that the claim is preempted by section 301 of the LMRA and the alleged conduct was not extreme and outrageous.

Whether a claim for intentional infliction of emotional distress is preempted under section 301 of the LMRA depends upon an examination of the alleged facts underlying the plaintiff's claim. See *Ellis v. Lloyd, 838 F. Supp. 704, 708–09 (D.Conn.1993);* see also *Brandmeyer v. Brescome Barton, Inc., 1999 Conn. Super. LEXIS 1739, No. C 980148932, 1999 WL 391097,* at *4 (Conn. Super. Ct. June 1, 1999). The context of the alleged conduct is critical.

If the conduct is alleged to have occurred during the course of the termination process, as part of appropriate employee discipline, or in connection with the grievance or arbitration proceedings concerning the employee, the claim is preempted because resolution of the claim would require the Court to evaluate the conduct of the employer in light [*31] of the terms of the CBA. See *Kellman v. Yale–New Haven Hospital, 64 F. Supp. 2d 35, 36–37 (D.Conn. 1999)* (employee's claim for intentional infliction of emotional distress based on his termination preempted); *Ellis v. Lloyd, 838 F. Supp. at 707–08* (intentional infliction of emotional distress claim preempted when based upon employment grievances filed against the plaintiff); *Anderson v. Coca Cola Bottling Co., 772 F. Supp. 77, 82 (D.Conn 1991)* (employee's claim for intentional infliction of emotional distress based on issuance of written warnings by his supervisor preempted); *Petrucelli v. Cytec Industries, Inc., 1996 U.S.*

*Dist. LEXIS 22498,* Civ.No. 3:95CV1055(AHN), *1996 WL 684401,* at *5 (D.Conn. May 23, 1996) (employee's claim for intentional infliction of emotional distress based on circumstances surrounding his promotions, layoffs, and grievances/arbitrations preempted).

If, however, the conduct is alleged to have occurred in a setting unrelated to the termination process, as part of appropriate employee discipline, or during grievance or arbitration proceedings, the claim is not preempted by section 301 of the LMRA. See *Vorvis v. Southern New England Telephone Co., 821 F. Supp. 851, 853–55 (D.Conn.1993)* [*32] (employee's intentional infliction of emotional distress claim not preempted where supervisor mistreated the plaintiff through verbal abuse, false statements about her job performance and unfair discipline); *Claps v. Moliterno Stone Sales, Inc., 819 F. Supp. 141, 154 (D.Conn.1993)* (employee's intentional infliction of emotional distress claim not preempted where supervisor and superintendent engaged in a series of demeaning and abusive practices); *Brandmeyer v. Brescome Barton, Inc., 1999 Conn. Super. LEXIS 1739, No. C 980148932, 1999 WL 391097,* at *4 (Conn. Super. Ct. June 1, 1999) (intentional infliction of emotional distress claim based upon abusive practices of supervisors and unfair discipline not preempted).

Carvalho alleges intentional infliction of emotional distress based, in part, upon harassing, threatening, and abusive conduct by his supervisors unrelated to any incident of appropriate employee discipline or the termination of his employment. Based on these allegations, resolution of his claim of intentional infliction of emotional distress may not require the interpretation of the terms of the CBA. As such, his claim for intentional infliction of emotional distress is not preempted [*33] by section 301 of the LMRA. n10

> n10 Of course, to the extent that his claim for intentional infliction of emotional distress is based upon the termination of his employment or his grievance or any incident of employee discipline, the claim is preempted.

Accordingly, the defendant's motion is denied as to count five of the complaint. n11

> n11 The Connecticut Superior Court will determine, on remand, whether the conduct complained of constitutes rises to the level of intentional infliction of emotional distress.

6. Negligent Infliction of Emotional Distress — Count 6

In the employment context, the cause of action for negligent infliction of emotional distress only arises where the defendant engaged in unreasonable conduct **in the termination process.** *Parsons v. United Technologies Corp., Sikorsky Aircraft Div., 243 Conn. 66, 700 A.2d 655, 667 (Conn. 1997);* [*34] see also *Pavliscak, 48 Conn. App. 580, 711 A.2d 747 at 755; Belanger v. Commerce Clearing House, 25 F. Supp. 2d 83, 84 (D.Conn. 1998); Cooper v. Dick's Clothing and Sporting Goods 25 F. Supp. 2d 59, 61 (D.Conn. 1998); Cowen v. Federal Express Corp., 25 F. Supp. 2d 33, 39 (D.Conn. 1998); Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. at 91* (emphasis added); *Rosenberg v. Meriden Housing Authority, 1999 Conn. Super. LEXIS 2971, No. CV950377376, 1999 WL 1034611,* at *9–10 (Conn. Super. Ct. Oct. 29, 1999). But see *Karanda v. Pratt & Whitney Aircraft, 1999 Conn. Super. LEXIS 1244, No. CV-98–582025S, 1999 WL 329703,* at *5 (Conn. Super. Ct. May 10, 1999), criticized by *Dorlette v. Harborside Healthcare Corp., 1999 Conn. Super. LEXIS 2165, No. CV 990266417, 1999 WL 639915,* at *3 (Conn. Super. Ct. Aug. 9, 1999). In order to properly allege negligent infliction of emotional distress, Carvalho must allege that his "actual discharge was done in an inconsiderate, humiliating or embarrassing manner". See *Belanger, 25 F. Supp. 2d at 84–85; Cooper, 25 F. Supp. 2d at 61;* see also *Huff, 10 F. Supp. 2d 117 at 124.* Thus, in the employment [*35] context, in order for a plaintiff to sufficiently allege negligent infliction of emotional distress he must allege (1) his employer engaged in unreasonable conduct, that is, conduct which is inconsiderate and intended to humiliate or embarrass the employee and, (2) that the conduct was engaged in during the course of the employment termination process. n12

n12 Claims for negligent infliction of emotional distress have been dismissed under *Fed.R.Civ.P. 12(b)(6)* based upon the plaintiff's failure to plead unreasonable conduct in connection with allegedly wrongful employment termination. See *Belanger, 25 F. Supp. 2d at 84–85; Cooper, 25 F. Supp. 2d at 61.*

In *Cooper v. Dick's Clothing and Sporting Goods, supra,* for example, the plaintiff employee was trying on golf shoes when he received an emergency telephone call in which he was informed that his father was gravely ill. The plaintiff rushed out of the store and, in the process, neglected to take off the shoes. [*36] Two and a half days later, he returned with the shoes, intending to purchase them. During his shift, however, the store employees confronted the plaintiff, accused him of theft, and he was terminated. *Id. at 60.* The plaintiff asserted, inter alia a claim for negligent infliction of emotional dis-

tress. Recognizing that the termination of an employee, even if unjustified, is not sufficient by itself to sustain a claim for negligent infliction of emotional distress, the Court granted the defendant's motion to dismiss the claim because the plaintiff had failed to allege sufficiently egregious conduct engaged in by the defendant's agents during the process of terminating his employment. *Id. at 61.*

Similarly, in *Thomas v. St. Francis Hosp. & Med. Ctr., supra,* the plaintiff employee alleged that the defendant hospital discriminated against her on the basis of her race, religion, marital status, and gender. She claimed that the discrimination lead to her receiving verbal and written job performance warnings, a suspension, and, eventually, termination of her employment. *990 F. Supp. at 91.* She also claimed that her supervisor [*37] made two comments to her relating to her race, marital status, and gender, characterizing the plaintiff as a black, unwed mother. *Id. at 92.* The plaintiff brought suit claiming, inter alia, negligent infliction of emotional distress. The court dismissed the negligent infliction of emotional distress claim on the basis that the plaintiff had not alleged any unreasonable conduct in the termination process itself Id.

As in Cooper and Thomas, Carvalho has not alleged facts which demonstrate that International humiliated him or embarrassed him when it terminated his employment. Carvalho alleges that he was informed of the termination of his employment in a memorandum from International, given his last paycheck, and told to leave. The alleged conduct of International during termination is not sufficient to sustain this cause of action.

As to Carvalho's allegations that two of his supervisors subjected him to harassment, berated him, threatened him, "hissed" at him, made gestures towards him, assigned him to work details which violated the physical restrictions placed on him by his doctor, and, on one occasion, ordered him to pick up papers from a deep [*38] puddle without foot coverings, these are not alleged to have occurred in the termination process and fail on that basis. See *Parsons, 700 A.2d at 667;* see also *Pavliscak, 711 A.2d at 755; Belanger, 25 F. Supp. 2d at 84; Cooper, 25 F. Supp. 2d at 61; Cowen, 25 F. Supp. 2d at 39; Thomas, 990 F. Supp. at 91.* But see *Karanda v. Pratt & Whitney Aircraft, 1999 Conn. Super. LEXIS 1244, No. CV-98–582025S, 1999 WL 329703,* at *5 (Conn. Super. Ct. May 10, 1999) (concluding that Parsons did not foreclose an action against an employer for negligent infliction of emotional distress outside of the termination process), criticized by *Dorlette v. Harborside Healthcare Corp., 1999 Conn. Super. LEXIS 2165, No. CV 990266417, 1999 WL 639915,* at *3 (Conn. Super. Ct. Aug. 9, 1999).

Therefore, for these reasons, the defendant's motion is granted as to count six of the complaint. Because this

count is dismissed on the basis that it does not state a claim upon which relief can be granted, the Court does not address the separate basis for dismissal: LMRA section 301 preemption.

Conclusion

Based on the foregoing, the defendant's **[\*39]** motion to dismiss or, alternatively, for summary judgment (doc. ## 10–1 & 10–2) is **GRANTED IN PART AND DENIED IN PART.** Counts two, three, four, and six are dismissed.

*28 U.S.C. § 1447*(c) provides in relevant part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The remaining counts of the complaint alleges a violation of *Conn.Gen.Stat. § 31-290a* (count one) and a common law cause of action for intentional infliction of emotional distress (count five). The Court has ruled that these claims are not preempted by § 301 of the LMRA. There is no apparent federal question jurisdiction as to those counts. The complaint also alleges that both the parties are citizens of Connecticut. Therefore, there is no apparent diversity jurisdiction. Accordingly, the Court lacks subject matter jurisdiction over the remainder of this action and it is hereby ordered that this case be remanded to the Connecticut Superior Court for the Judicial District of Hartford/New Britain at New Britain. The Clerk is ordered to close this case.

SO ORDERED this 25th day of February, 2000, **[\*40]** at Hartford, Connecticut.

CHRISTOPHER F. DRONEY

UNITED STATES DISTRICT JUDGE

JUDGMENT

This action having come on for consideration of the defendant's motion to dismiss or in the alternative for summary judgment, before the Honorable Christopher F. Droney, United States District Judge, and

The court having considered the full record of the case including applicable principles of law, and having filed a Ruling, granting the motion to dismiss and denying the motion for summary judgment, it is therefore,

ORDERED, ADJUDGED and DECREED that the judgment be and is hereby entered in favor of the defendant.

Dated at Hartford, Connecticut, this 25th day of February, 2000.

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing **STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** was served by first class U.S. Mail, postage prepaid, this 5th day of January, 2006, on Plaintiff, *pro se*, addressed as follows:

        Kareem Ashe
        5906 Clay Street, N.E.
        Washington, D.C.  20019

                    _____/s/ Henry A. Platt_____

*BO4823*

14